UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA ANN MANIER,

    Plaintiff,                           CIVIL ACTION NO. 12-10860

                                          DISTRICT JUDGE LAWRENCE P. ZATKOFF

    v.                                    MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 8) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 10)

## I.    PROCEDURAL HISTORY

### *A.    Proceedings in this Court*

On February 27, 2012, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny her social security benefits. (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the matter was referred to this Magistrate Judge for a report and recommendation. (Dkt. No. 2). Cross-motions for summary judgment are pending. (Dkt. Nos. 8, 10).

### *B.    Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on January 17, 2008, alleging a disability onset date of June 30, 2006. (Tr. 15). Plaintiff's claim was initially denied by the Commissioner on June 26, 2008. (Tr. 15). On August 23, 2010, Plaintiff appeared with counsel for a video hearing before Administrative Law Judge ("ALJ") Denise McDuffie Martin,

who considered the case *de novo*. In a decision dated January 4, 2011, the ALJ found that Plaintiff was not disabled. (Tr. 15-25). Plaintiff requested a review of this decision. (Tr. 1). On January 20, 2012, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for further review. (Tr. 1-3).

In light of the entire record, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.     STATEMENT OF FACTS**

   *A.     ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found at step one that Plaintiff had not engaged in substantial gainful activity. (Tr. 17).

At step two, the ALJ found Plaintiff had the following "severe" impairments: degenerative disc disease[1], tendonitis of the arms[2], knee pain, and depression. (Tr. 17).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. (Tr. 17).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

---

[1] "Degenerative disc disease is a spinal condition caused by the breakdown of intervertebral discs." http://www.mayfieldclinic.com/PE-DDD.htm (last visited November 26, 2012).

[2] Tendinitis (also called tendonitis, tenonitis and tenontitis) is inflammation of the tendons (fibrous cords of connective tissue by which a muscle is attached). *Dorlands Illustrated Medical Dictionary,* 1904 (31st Ed. 2007).

> light work . . . except she can occasionally push and pull with upper and lower extremities; never climb ladders, ropes, scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and is limited to unskilled work with simple, repetitive, and routine tasks that is not fast paced and has an average productivity level.

(Tr. 19).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 24).

At step five, the ALJ denied Plaintiff benefits, finding Plaintiff could perform a significant number of jobs available in the national economy, such as housekeeper (8,700 jobs in the lower Peninsula); usher (4,400 jobs in the lower Peninsula); and cashier (33,000 jobs in the lower Peninsula). (Tr. 24-25).

### B. Administrative Record

#### 1. Plaintiff's Testimony & Statements

Plaintiff testified at the administrative hearing that she is unable to work because she has pain in her neck, right arm, lower back, and knees. (Tr. 40-41). Plaintiff wakes up at night in pain. (Tr. 42).

Plaintiff testified that she takes 1-2 hour naps during the day (Tr. 43); she can only sit for 20 minutes (Tr. 43-44); cannot stand longer than 15-20 minutes (Tr. 44); and can only lift a gallon of milk. (Tr. 44).

Plaintiff can drive (although her hands go to sleep when she drives long distances), do housework, grocery shop, and cook (Tr. 42, 45-47); she cannot do yard work. (Tr. 42). She testified that she has trouble using a cell phone, operating a computer mouse, opening bottles, and putting on her jewelry. (Tr. 46-47).

### 2. Medical Expert's Testimony

Dr. Marva Dawkins, a medical expert, testified at the hearing that Plaintiff was: (1) moderately limited in activities of daily living; (2) mildly impaired in social functioning; (3) markedly impaired in concentration, persistence and pace; and (4) seriously impaired in the mental capacity to perform and sustain even simple, routine tasks. (Tr. 52-53).

### 3. Vocational Expert

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is the same age, and has the same educational and vocational background, as Plaintiff. The individual is:

> limited to light work; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling. She would be limited to only occasional pushing and pulling with the upper and lower extremities and it should be an unskilled, simple, routine, repetitive job, not fast pace, average productivity level.

(Tr. 56). The VE testified that such an individual could perform Plaintiff's past work as a sales attendant. (Tr. 56-57). Plaintiff could also perform work as a housekeeper (8,700 jobs in the region; 37,000 jobs nationally), usher (4,400 jobs in the region; 166,000 jobs nationally), and cashier (33,00 jobs in the region; 1,100,000 jobs nationally). (Tr. 57).

The VE testified that such an individual would be precluded from work, if she could not perform a regular workday or work week on a consistent basis because of her inability to maintain pace. (Tr. 57).

### C. *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act, because the ALJ erred in assessing Plaintiff's credibility and, thereby, formed an inaccurate hypothetical that did not accurately portray her

impairments. Plaintiff also argues that the ALJ erred by affording "little weight" to Dr. Dawkins' opinion.

### III.   DISCUSSION

#### A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a government agency makes the initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider

the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.     Governing Law

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden shifts to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

  C. *Analysis and Conclusions*

    1. **The ALJ Did Not Err in Assessing Plaintiff's Credibility**

Plaintiff argues that the ALJ did not properly analyze her subjective complaints of pain. This Magistrate Judge disagrees.

The Sixth Circuit has discussed the analytical framework for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). In her findings, the ALJ determined that Plaintiff had medically determinable impairments. (Tr. 20). Accordingly, Plaintiff meets the first prong of the *Duncan* standard – there is objective medical evidence of an underlying medical condition.

As to the second prong – whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain – the [ALJ found] that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. 20). However, the ALJ did not find Plaintiff's statements

concerning the intensity, persistence and limiting effects of her condition (including her pain) fully credible. (Tr. 20). If the ALJ rejects the testimony of the Plaintiff as not being credible, the reasons for that conclusion must be clearly stated. *Felisky*, 35 F.3d at 1036. In particular, the ALJ must follow the requirements of, among other provisions, 20 CFR § 404.1529 as well as SSR 96-7p.

>   SSR 96-7p provides that:
>
>> the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individuals allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

The factors described in the regulations for evaluating symptoms include:

(i)  Your daily activities;

(ii)  The location, duration, frequency and intensity of your pain or other symptoms;

(iii)  Precipitating and aggravating factors[3];

---

[3] Plaintiff did not present any testimony regarding precipitating and aggravating factors.

    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[4];

    (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and

    (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3).

Plaintiff does not indicate how she believes the ALJ erred in evaluating her credibility. And, the record demonstrates that the ALJ stated specific reasons, supported by evidence in the record, for the weight given to Plaintiff's testimony. The ALJ supported her conclusion that Plaintiff's testimony was not fully credible using the medical evidence. (Tr. 20-22). In addition to the objective medical evidence, the ALJ analyzed the applicable factors delineated in the regulations:

> [b]ecause symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, I have carefully considered statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility (SSR 96-7p). Specifically, I have carefully considered the other factors enumerated in SSR 96-7p in evaluating the intensity[,] persistence and limiting effects of the [Plaintiff's] symptoms.

(Tr. 22). In making her credibility determination, the ALJ considered Plaintiff's testimony, which included Plaintiff's daily activities; the location of Plaintiff's pain; the type of medication Plaintiff takes; treatment, other than medication, Plaintiff received for pain relief; and the measures she used to relieve her pain. (Tr. 20-22).

---

[4] Plaintiff did not present any testimony regarding the effectiveness and side effects of her medication.

Because the ALJ clearly stated the reasons her credibility determination, and those reasons were supported by evidence in the record, this Magistrate Judge finds the ALJ's decision is supported by substantial evidence.

### 2. The ALJ Formed a Hypothetical that Accurately Portrayed Plaintiff's Limitations

Plaintiff next argues that the ALJ did not incorporate the following medical evidence and impairments into the hypothetical question to the VE:[5]

1. On September 25, 2007, Dr. Joseph E. Talbot found Plaintiff had a cervical muscle spasm and modest facet hypertrophy.[6]  (Tr. 320).

2. On April 29, 2008, Dr. Joel Beltran reported an abnormal EMG of the left upper extremity with electro diagnostic evidence of a C7 radiculopathy[7] mild in nature associated with ongoing denervation in the corresponding musculature.  (Tr. 362).

3. On April 30, 2008, Dr. R. Scott Lazzaro referenced Plaintiff's MRI that confirmed she had a herniated disc, and he opined that Plaintiff's symptoms appeared to be myofascial in origin.  (Tr. 360).

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely,

---

[5] This Magistrate Judge disagrees with Defendants' position that Plaintiff's argument is "best addressed as being whether substantial evidence supports the ALJ's residual functional capacity (RFC) finding" (Dkt. No. 10 at p.10).  Plaintiff specifically argues that "[t]he ALJ did not properly form a complete hypothetical question [and] [s]he did not properly evaluate all of Ms. Manier's impairments in the hypothetical question" (Dkt. No. 8 at p.10).

[6] "Facet hypertrophy is the term used to describe a degeneration and enlargement of the facet joints.  The facet joints . . . are designed to provide support, stability, and flexibility to the spine."  http://www.spine-health.com/glossary/h/hypertrophic-fact-disease (last visited November 26, 2012).

[7] "Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the course of the nerve."  http://www.medicinenet.com/radiculopathy/article.htm (last visited November 26, 2012).

where the hypothetical does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding.

A hypothetical question is not required to list all Plaintiff's medical conditions, but is only required to reflect her *limitations*. *See Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) ("vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise"). In *Jackson v. Comm'r of Soc. Sec.*, Case No. 07-14184, 2009 WL 612343 (E.D. Mich. March 6, 2009), the plaintiff alleged that the ALJ's hypothetical question to the VE:

> made no mention of [her] chronic pain in her knees, [the fact that she] has to rotate from sitting to standing at least every half hour to an hour . . . [she has to] use . . . a cane, sitting causes ankle pain, extreme headaches occurring five to six times a week that she has to use ice packs, try to relax and close her eyes.

*Id.* at *12. Citing *Webb*, the court held that, "[c]ontrary to what Plaintiff suggests, the ALJ is not required to list her impairments in a hypothetical question to the VE . . . so long as [the] ALJ . . . accounted for Plaintiff's limitations in his hypothetical question to the VE, he was not required to list her medical conditions." *Id.*

Plaintiff does not argue that the ALJ's hypothetical did not accurately account for her *limitations*. Accordingly, this Magistrate Judge finds the ALJ's decision is supported by substantial evidence.

### 3.     Dr. Dawkins' Opinion

Plaintiff's final argument is that the ALJ erred by affording "little weight" to Dr. Dawkins' opinion. This Magistrate Judge disagrees.

The ALJ stated the following regarding Dr. Dawkins' opinion:

> I have carefully considered the opinion of testifying psychologist Marva P. Dawkins, PhD. Dr. Dawkins testified [Plaintiff] has multiple physical concerns, and also depression and anxiety and found it difficult to separate the two. She

> testified that [Plaintiff's] ability to perform and sustain even simple, routine tasks would be seriously impaired due to the combination of mental and physical concerns; this in turn would result in frequent interruptions in the workplace and she would require more than the usual number of rest breaks or needing[sic] to take time off before she could start and complete a task. Although I acknowledge Dr. Dawkin's[sic] testimony if fully credited would preclude work, the evidence does not support this opinion and I accord it little weight. As of April 2008, [Plaintiff] had never seen a psychologist or mental health professional, and as of November 2008, [Plaintiff] was feeling good and not depressed. [Plaintiff] testified that her back pain was the reason she could not continue her work attempt at Kohl's; she did not testify to problems related to her depression. [Plaintiff] advised Dr. Talasia she had no income due to back pain rather than problems associated with her depression. Moreover, Dr. Dawkins considered physical limitations in her assessment, which were admittedly outside her qualifications as a psychologist. Her opinion is in significant conflict with those of Drs. Newhouse and Cremerius, whose opinions . . . are not accorded great weight but are considered somewhat persuasive nonetheless, as they . . . based their restrictions on [Plaintiff's] psychological evidence alone. Because of this, and because, excepting [Plaintiff's] subjective complaints Dr. Dawkins' opinion is otherwise unsupported by the record, I accord her opinion little weight.

(Tr. 23). In evaluating an opinion from a non-treating medical source, like Dr. Dawkins, the ALJ considers the supportability and consistency of the opinion, and the specialization of the medical source. 20 CFR §404.1527(c)(3)-(5).

This Magistrate Judge finds the ALJ properly afforded "little weight" to Dr. Dawkins' opinion, because it was not supported by the record and concerned matters outside her expertise. *See* Tr. 51-52 ("[Plaintiff] has multiple physical concerns, which is not my area of expertise" and "it's probably not possible to separate out cleanly physical concerns that she might have from mental problems"); *see also* 20 CFR §404.1527(c)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist").

IV.   **CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: December 6, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, December 6, 2012, electronically and a copy sent via first class mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*

2:12-cv-10860-LPZ-MAR   Doc # 11   Filed 12/06/12   Pg 16 of 16   Pg ID 515